**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: **Patricia Eggleston,** Debtor. | Chapter 13  Bankruptcy No. 20-06384  Honorable Deborah L. Thorne |
| **Patricia Eggleston**, Plaintiff, v. **American Tax Solutions**, Defendant. | Adversary No. 22-ap-00068 |

**RESPONSE IN OPPOSITION TO MOTION TO VACATE**
**DEFAULT AND DEFAULT JUDGEMENT**

  This adversary case was commenced by the Plaintiff on May 3, 2022. The Complaint and Summons were properly served upon the Defendant on that day. After being repeatedly promised a responsive pleading, on August 31, 2022, the Plaintiff brought a motion for default and default judgment. This motion was properly served on the Defendant, as well as being emailed and mailed to Rishi Agrawal, who had been holding himself out as Defendant's counsel since early June.

  Attorney Agrawal had made the following representations to the undersigned, in writing, concerning the Defendant's intent to file a motion to dismiss the complaint:

| **Date:** | |
|---|---|
| **June 13, 2022** | "If we are not able to resolve this matter soon, we will plan to have the motions on file before the next court date" |
| **August 5, 2022** | "I am working with national counsel on this, let me find out when we can expect the motion to be ready to go" |
| **August 25, 2022** | "we are still planning to file a motion" |
| **August 31, 2022** | "we anticipate filing our MTD on thursday or Friday" |

The last email was sent in response to the Plaintiff's emailing Agrawal a copy of his motion for default and default judgment.

Additionally, Plaintiff's counsel filed the motion for default and default judgment after repeatedly expressing to Agrawal that he – Plaintiff's counsel – was concerned that his continued patience would make it look like he was, in some capacity, failing to prosecute his client's adversary.

"Thursday or Friday," in the Defendant's last email, would have been September 1 or September 2, 2022. No motion to dismiss was filed. The motion for default and default judgment was properly served but no party filed an objection to the motion in compliance with this Court's General Order 20-03. Nobody appeared at the hearing in opposition to the motion for default or default judgment (though, absent objection, the motion was marked "granted without hearing," the Plaintiff's

counsel sat through this Court's September 7, 2022 set matters call, and nobody logged in for the Defendant).

On September 9, 2022, the Defendant filed its motion to vacate the default and default judgment, and requesting leave to file its motion to dismiss.

Pursuant to Federal Rule of Civil Procedure 55(c), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7055, "The Court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." The Seventh Circuit Court of Appeals adopts a strict standard with reference to "good cause" to set aside a default: "In order to vacate an entry of default the moving party must show: (1) good cause for default, (2) quick action to correct it and (3) meritorious defense to plaintiff's complaint." *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.* 28 F.3d 42, 45 (7th Cir. 1994).

All three of these conditions must be met to vacate a default.

### 1. SETTING ASIDE A DEFAULT: GOOD CAUSE FOR DEFAULT

The Defendant has not established good cause to vacate its default. The adversary complaint was filed, and the summons issued and served, on May 3, 2022. Pursuant to Federal Rule of Bankruptcy Procedure 7012(a), "If a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of the summons."

In this case, the Defendant did not file its motion to dismiss the complaint (appended to its motion to vacate and motion for leave) until over four months after

the commencement of the adversary proceeding. In *Pretzel & Stouffer*, the Seventh Circuit affirmed the trial court's denial of a motion to vacate when, "on the date the court entered the default order Imperial had not yet filed its answer even though <u>three weeks</u> had passed since the deadline for filing." *Id.*, *emphasis added*. Here, just under <u>three months</u> had passed since the 30-day deadline for an answer or other pleading. Though the undersigned had parlayed with Agrawal, these efforts quickly ran aground, and the undersigned had never agreed to give him more time, had sent him a filed copy of the motion for default and default judgment, and Agrawal did not request more time to answer.

Furthermore, no party filed an objection to the motion for default and default judgment, and no party appeared at the hearing in opposition to that request. Again, in *Pretzel & Stouffer*, the Defendant's attorney "did not appear" at a hearing, "and he was not able to produce a valid excuse for his absence. He claimed to have mis-calendared the date. Mis-calendaring a date is certainly a plausible mistake, but it is the attorney's mistake and he and his client are responsible for the consequences." *Id*. Routine back-office problems "do not rank high in the list of excuses for default." *Id*. at 46, citing *Connecticut National Mortgage Co. v. Brandstatter*, 897 F.2d 883, 884-85 (7th Cir. 1990). (In this vein, in a case concerning sufficiency of process under Rule 7004, the Seventh Circuit affirmed the District Court's denial of a request vacate a default judgment when the Defendants were properly served, but unaware of the litigation because they were out of the country. *In re Vincze*, 230 F.3d 297 (7th Cir. 2000). Subsequently, their attorney failed to

attend the hearing on the motion for default because he had car trouble. *Id.* at 298. In the instant matter, however, the sufficiency of process is not in dispute.)

The answer deadline is not altered by interparty communications, especially when – as here, the Plaintiff's counsel repeatedly indicated his desire to see some sort of activity. Ongoing settlement discussions are not good cause for failing to answer a pleading. *Medline Industries, Inc. v. Medline RX Financial, LLC*, 218 F.R.D. 170, 172 (N.D.Ill 2003), but here, there were no such settlement discussions, as the Defendant acknowledges.

The Defendant's motion does not speak to its untimeliness or its failure to object, only that it was an "inadvertent mistake" that counsel failed to attend the hearing. The Defendant failed to attend the hearing, but that was not the exclusive error. But the Plaintiff's motion wasn't "called" at the hearing – it had been marked "on the door" that it would be granted. The notice of the hearing, using the Court's form language, specified that an objection would need to be filed more than two days before the hearing. Nothing was filed, at any time.

Defendant notes that "Plaintiff has not suffered any prejudice in this matter," by the lapse of time, but the deadlines set by the Federal Rules of Civil Procedure do not require prejudice to have effect. "Prejudice to the plaintiff, frankly, is not part of the analysis." *Id.* at 173.

The Defendant's counsel indicates (accurately) that he had been in contact with Plaintiff's counsel since June 1, 2022, but that does not redound in the Defendant's favor – it shows that the Defendant and its able counsel was aware of

the litigation, and was still electing not to act – to neither answer, nor move to dismiss, nor request from the Court an extension of time. The Defendant has presented no valid reason for its failure.

Along the way, the Defendant notes: "Plaintiff's failure to name the correct party in the complaint was only recently corrected by the Plaintiff on August 5, 2022." This is mostly a mischaracterization, though immaterial in every event: The Plaintiff's Complaint reflects – correctly – the name of the Defendant as American Tax Solutions. However, on the adversary cover sheet, and the electronic docket when the case was commenced, it showed the Defendant as American Tax Services. (See dkt. 1 in the adversary case.) The Complaint was – and remains – correct. The scrivener's error in the cover sheet and docket, fixed by the Plaintiff (by filing an amended cover sheet, which occasioned the Clerk's office correcting the case name in CM/ECF, and notifying Agrawal that day about having done so), more than a month before the court date on his Motion for Default and Default Judgment, does not admit cause for Defendant's delay in acting (especially when, as Defendant notes, he had been parlaying with Plaintiff's counsel for about two months).

The Defendant has not shown good cause for its default, and so the default should not be vacated.

## 2. SETTING ASIDE A DEFAULT: QUICK ACTION TO CORRECT

The Court found the Defendant in default, and entered default judgment against it, on September 7, 2022. The orders posted on the docket of this case on

September 8, and the Defendant filed its motion to vacate on September 9. The Plaintiff is willing to agree that the Defendant took quick action to correct the default. That said, the Defendant needs "to meet all three requirements," and fails in the first and (likely) the third. "Given these failures, the speed at which it may have acted to correct the default cannot change the result." *Pretzel & Stouffer*, 28 F.3d at 46-47.

### 3. SETTING ASIDE A DEFAULT: MERITORIOUS DEFENSE (COUNT 1 – AUTOMATIC STAY)

Annexed to the Defendant's motion to vacate is a motion to dismiss the case, but it does not bespeak a meritorious defense. For purposes of vacating a default judgment, such defense need not succeed in defeating a judgment, must at least raise a serious question about the propriety of a default judgment and be supported by a developed legal and factual basis. *Wehrs v.* Wells, 688 F.3d 886, 890-91 (7th Cir. 2012).

With reference to the Plaintiff's complaint that the Defendant's Solicitation was a violation of the automatic stay – employing duplicity and falsehoods as it attempts to scare the Debtor into transmitting the Defendant estate property – the motion to dismiss ignores caselaw and instead relies, without justification, on a nonstandard interpretation of 11 U.S.C. 362(a)(3). From there, it indicates that the Court lacks subject matter jurisdiction over the matter at bar. The Seventh Circuit holds that "a defendant's response to a motion for default judgment was insufficient

if it lacked a grounding in facts which would support a meritorious defense of the action by the non-moving party. We have also held that a meritorious defense requires more than a 'general denial' and 'bare legal conclusions.'" *Pretzel & Stouffer*, 28 F.3d at 46, *citations omitted.*

The Motion to Dismiss appended to the Defendant's motion to vacate, and motion for leave, is not sufficient. The Defendant argues, first, that the Bankruptcy Court lacks subject matter jurisdiction over the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1). The Defendant argues that subject matter jurisdiction is lacking because the Plaintiff failed to establish standing.

To backstop this argument, the Defendant relies, without elaboration, on a specious interpretation of 11 U.S.C. 362(a)(3), arguing that "The Parties' interests are not legally adverse. Defendant is not a creditor of Debtor[…]" and "the stay did not bar Defendant's conduct because Defendant is not a creditor of Debtor."

However, by its plain terms, section 362(a)(3) of the Bankruptcy Code is not confined to creditors who are attempting to enforce a claim against the Debtor. *National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708 (7th Cir. 1994). The filing of a bankruptcy petition operates as a stay, applicable to <u>all entities</u>…" 11 U.S.C. 362, *emphasis added.* Intentionally-deceptive advertising, even by a non-creditor, that interferes with estate property is stayed by 11 U.S.C. 362(a)(3). *Cyganowski v. Biolitec U.S., Inc.*, 2015 WL 351201 at *9-12 (Bankr. D.N.J. 2005), *Alert Hldgs., Inc. v. Interstate Protective Services, Inc.*, 148 B.R. 194, 202-203 (Bankr. S.D.N.Y. 1992), *In re Windstream Holdings, Inc.*, 627 B.R. 32, 42 (Bankr.

S.D.N.Y. 2021) (*but see District Court's reversal In re Windstream Holdings, Inc., et al.*, 2022 WL 5245633 (S.D.N.Y. Oct. 6, 2022)). If the Defendant had deceptively induced Eggleston to use estate property to employ its services, the fact that she would have hired them of her own free will would not excuse the fact that it used blatant deception to get itself paid – which payment would have been composed, the Defendant does not deny, of estate property.

"[T]he injury required by Article III for constitutional standing may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992), *internal quotation omitted.* "All [a plaintiff needs to] show in order to demonstrate an Article III case or controversy is… some probability of a tangible benefit from winning the suit." *Tucker v. United States Dep't of Commerce*, 958 F.2d 1411 (7th Cir. 1992). Having a claimed interest in estate property, as the Debtor does (once again, the property at issue is postpetition income or assets with which the Defendant would induce the Debtor to pay them, part of the estate by virtue of 11 U.S.C. 1306) is sufficient to pursue sanctions for a stay violation. *In re Mwangi*, 432 B.R. 812, 822-23 (9th Cir. B.A.P. 2010). (The *Mwangi* Bankruptcy Appellate Panel decision was reversed on grounds not applicable here, 764 F.3d. 1168 (9th Cir. 2014), to wit, it arose in the context of a chapter 7 bankruptcy, and the Ninth Circuit cited with approval the bankruptcy court's determination that "the trustee alone has standing to protect estate property" *Id.* at 1172. But in a chapter 13, as here, the Debtor is charged with maintaining property of the estate that is acquired before the case is

closed, dismissed, or converted. 11 U.S.C. 1306(b), 1306(a).) By alleging actual injury in response to the Defendant's solicitation, to wit, legal fees and costs not contemplated in her Court-Approved Retention Agreement, the Plaintiff has shown an injury directly traceable to the Defendant's solicitation, and this injury would be redressed by a favorable ruling. *In re Ampal-American Israel Corp.*, 502 B.R. 361, 369 (Bankr. S.D.N.Y. 2013).

The Defendant's arguments for why the Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) seem to focus on the automatic stay action, Count 1. The defendant admits that it "was engaged in selling services, which is not a collection activity." But, to violate 11 U.S.C. 362(a)(3), "collection activity" as such is not required. In *In re Alert Holdings*, 148 B.R. 194 (Bankr. S.D.N.Y. 1992), a competitor's falsely advertising that it was designated to take over the bankrupt alarm company's accounts (in addition to taking numerous other steps) was found to violate the automatic stay as an attempt to exercise control over the Debtor's contracts. Misrepresentation distinguishes a stay violation from normal commercial activity or day-to-day advertising. Here, the Defendant (falsely) designed its mailing to look like it was being issued by the "Tax Resolution Unit" of Cook County, (falsely) described its communication as a distraint warrant, (falsely) advised the Debtor that there would be immanent consequences if the Debtor failed to call them, (falsely) indicated that it, itself, was a lien, and (falsely) told the Debtor that immediate action was required. On which note:

## SETTING ASIDE A DEFAULT: MERITORIOUS DEFENSE (COUNT 2 – ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT)

The Defendant further notes that this Court may have supplemental jurisdiction over claims that are so related to the bankruptcy proceeding that they may give rise to federal jurisdiction, before asserting that the Court should decline to exercise that supplemental jurisdiction because the Plaintiff brings her second claim under Illinois state law.

The Defendant does not argue that its so-called marketing was honest, or not deceptive. Instead, it argues that the Bankruptcy Court isn't the place to hear the question. (Notwithstanding, again, that this Court has already ruled in the Plaintiff's favor, albeit on a default basis.) This Court has "related to" jurisdiction over the action under 28 U.S.C. 1334(b). Any right that the Debtor possesses under the Illinois Consumer Fraud and Deceptive Business Practices Act is property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. 541(a) and 1306(a)(1). The outcome of the instant dispute would affect the amount of property in the bankruptcy estate. *In re Wolf*, 595 B.R. 735, 749, *citing Zerand-Bernal Grp. Inc. v. Cox*, 23 F.3d 159, 161-62 (7th Cir. 1994). Any monetary recovery on the Debtor's part would be assuredly non-exempt, and would thus affect the Debtor's obligations under her plan. As such, the District Court may refer this claim to the Bankruptcy Court. 28 U.S.C. 157(a). If this Court ultimately determines that it does not have "core" jurisdiction to enter a final order, 28 U.S.C. 157(b), the proper remedy would

be for this Court to enter findings of fact and conclusions of law for the District Court. *In re Arnold Print Works Inc.*, 815 F.2d 165, 167 (1st Cir. 1987).

The Defendant argues that permissive abstention, under 28 U.S.C. 1334(c)(1), is appropriate. The Seventh Circuit has cited with approval the Ninth Circuit's factors when a bankruptcy court should permissively abstain. *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 6 F.3d. 1184 (7th Cir. 1993), *citing In re Eastport Assoc.,* 935 F.2d 1075-76. (These are the same standards that Defendant cites by way of other caselaw.) With respect to Count 2, the majority of factors augur in favor of this Court retaining jurisdiction over the "related to" Illinois law claim.

> (1) The effect or lack thereof on the efficient administration of the estate if a Court recommends abstention: This suggests the Court should retain this state law claim. The Debtor's plan proposes to pay one percent – an estimated $909, grand total – to allowed general unsecured claims. Even a small recovery for the Debtor could affect administration of her estate, by implicating the liquidation analysis, by providing for non-exempt recovery to be payable to the standing trustee, or otherwise. (On which note, this additionally backstops the Court's observation in *Hearthside Baking Co., Inc.*, 391 B.R. 807, 815-16 (Bankr. N.D.Ill. 2008) that the impact on administration of the estate by remanding a proceeding back to state court is less onerous in a liquidating case than, as here, a reorganizing case.)
> (2) The extent to which state law issues predominate over bankruptcy issues. This could suggest abstention as to Count 2, but the Defendant didn't argue as such and so this argument should be considered waived.
> (3) The difficulty or unsettled nature of the applicable law: This does not augur in favor of abstention; for the Court to determine whether the Defendant's solicitation was misleading under the Illinois law would be a straightforward matter of applying the law to the words on its single page; no witnesses would be necessary and it would appropriately be a matter not even for summary judgment, but judgment on pleadings under Rule 12(c).

(4) The presence of a related proceeding commenced in state court or other nonbankruptcy court: This does not augur in favor of abstention; there is none.
(5) The jurisdictional basis, if any, other than 28 U.S.C. 1334: For the Plaintiff's Count 2, this is limited, but again, the Defendant did not argue as such and so this argument should be considered waived.
(6) The degree of relatedness or remoteness to the main bankruptcy case: Count 2 is brought simultaneously, and against the same defendant, as Count 1, and as such is intertwined with Count 1.
(7) The substance rather than form of an asserted "core" proceeding: The defendant asserts that Count 1 isn't a core proceeding when arguing in favor of this Court's abstaining on Count 2. The Defendant substantiates that assertion by arrogating itself a conclusory victory that it hasn't yet won; in fact, judgment was already entered against it. In the event, this factor does argue in favor of abstention – the substance/form distinction is described by the Fifth Circuit as: "The essential issue in the proceeding is whether the defendants are liable to the plaintiff under state law. The suit does not raise as primary issues such matters as dischargeability, allowance of the claim, or other bankruptcy matters." *Matter of Wood*, 825 F.2d 90, 98 (5th Cir. 1987).
(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court. This is feasible, which would argue in favor of abstention.
(9) The burden on the bankruptcy court's docket: Again, Count 2 is not complicated, and would not require evidence or testimony. This argues against abstention.
(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping: The defendant's bald assertion that "It seems unlikely that Count 2 would have upheld in court," is not substantiated enough to give rise to an accusation of forum-shopping. The Plaintiff disagrees. Nobody has ruled. This argues against abstention.
(11) The existence of the right to a jury trial: This would be present in Bankruptcy Court, if deemed appropriate. This argues against abstention.
(12) The presence in the proceeding of nondebtor parties: The Defendant is not a Debtor (or one of the Debtor's creditors), but again, the Defendant did not argue as such and so this argument should be considered waived.

Tabling the arguments that the Defendant didn't make, only the seventh and eighth factor weigh in favor of this Court abstaining. (Including waived arguments still does not reach a majority of the factors.)

To vacate the default under rule 55(c), the defendant must meet all three conditions required by the Seventh Circuit to do so. While the Plaintiff allows that the Defendant acted timely to correct its error, and that the "meritorious defense" requirement is may be a mixed bag, the Defendant unequivocally fails to have established good cause for its default, and so this Court may not vacate the default.

### SETTING ASIDE A FINAL JUDGMENT UNDER 60(B)

Higher still is the standard for setting aside the default judgment that was entered against the Defendant under Federal Rule of Civil Procedure 60(b). For the reasons already discussed, this Court cannot find "mistake, inadvertence, surprise, or excusable neglect" such that the judgment would be appropriately set aside under Federal Rule of Civil Procedure 60(b)(1).

Vacating a judgment for "any other reason that justifies relief," under Rule 60(b)(6), is similarly unavailing. Such relief is warranted only upon a showing of extraordinary circumstances that create a substantial danger that the underlying judgment was unjust. *Margoles v. Johns*, 298 F.2d 1069, 1072-73 (7th Cir. 1986). Extraordinary circumstances are not found here. Default judgment was entered against the Defendant after it failed to answer or otherwise plead. Analogously, "Petitioners' negligence in not presenting [certain] claims to the Court in a timely

manner is not grounds for Rule 60(b) relief." *National Bank of Joliet v. W.H. Barber Oil Co.*, 69 F.R.D. 107, 110 (N.D.Ill. 1975).

**Wherefore**, the Plaintiff respectfully requests that this Court deny the Defendant's motion to vacate and motion for leave to file its motion to dismiss, and issue such other relief as is just and proper.

Dated: October 11, 2022                                         Respectfully submitted,

                                                               **Patricia Eggleston,**

                                                               By: /s/ Justin R. Storer
                                                               One of Her Attorneys

Justin R. Storer (ARDC 6293889)
**FACTORLAW**
105 W. Madison, Suite 1500
Chicago, IL 60602
Tel: (312) 373-7226
Email: jstorer@wfactorlaw.com